UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| GULF CROSSING PIPELINE COMPANY LLC §§§§§ Plaintiff, §§§ v. §§§ 7.50 ACRES , MORE OR LESS, being all or part of the M.D. Hart Survey, A-484 in Grayson County, Texas and 6.18 ACRES MORE OR LESS being all or part of the M.D. Hart Survey, A-484 in Grayson County, Texas, said tracts also called together 13.75 acres of land; ET AL. §§§§§§§§§§§§§§ Defendants. § | Case No: 4:08CV178 |

**PRELIMINARY INJUNCTION ORDER**

Pursuant to the Memorandum Adopting Report and Recommendation of United States Magistrate Judge filed in this matter, the following Preliminary Injunction Order is issued in this matter.

To obtain a preliminary injunction, the applicant must show: (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve the public interest. *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005); *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195 (5th Cir. 2003). The

1

party seeking an injunction carries the burden of persuasion on all four requirements. *Lake Charles Diesel, Inc.*, 328 F.3d at 196. Under Rule 65, "[e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail ... the act or acts sought to be restrained...." FED. R. CIV. P. 65(d).

In this case, the court finds the following facts by virtue of the pleadings, submissions and stipulations of the parties, and the evidence presented, including the testimony of witnesses and as further reflected on the record:

This court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 717f(h). Jurisdiction is uncontested. Venue is appropriate in this District since the real property affected is located in this District. 28 U.S.C. § 1391(a)(b)(2).

Gulf Crossing was created for the purpose of receiving, transporting, and delivering natural gas to various users. The natural gas to be transported by Gulf Crossing will ultimately be used by local distribution companies, electric generators, and other residential and commercial users of natural gas. Gulf Crossing's natural gas pipeline will connect with other major interstate natural gas pipeline networks serving the Northeast, Midwest, and Southeast United States.

On June 19, 2007, pursuant to Section 7(c) of the Natural Gas Act, 15 U.S.C. § 717f, Gulf Crossing filed an application for a certificate of public convenience and necessity with FERC (docket numbers CP07-398-000, CP07-398-001, CP07-399-000, and CP07-4000-000) to construct, own, and operate a new natural gas pipeline and appurtenant auxiliary facilities, extending from a point near Sherman, Texas, to existing natural gas pipeline interconnects near Tallulah, Madison Parish, Louisiana (hereinafter referred to as the "Pipeline").

On March 21, 2008, FERC issued a Final Environmental Impact Statement, designating and approving the Pipeline's proposed route.

On April 30, 2008, FERC entered an order, issuing Gulf Crossing a certificate of public convenience and necessity and authorizing it to construct, operate, and maintain the Pipeline, with an in-service date of no later than April 30, 2009.

On May 1, 2008, Gulf Crossing accepted the terms and conditions set forth in FERC's order.

As an interstate natural gas pipeline company, Gulf Crossing is regulated by FERC. *See* 15 U.S.C. § 717f.

Gulf Crossing has entered into binding commitments with various pipeline construction companies to build the Pipeline, with construction having commenced on or about June 1, 2008. Because of the dramatic spike in demand for pipeline infrastructure, Gulf Crossing is not aware of any other pipeline construction companies, which have the necessary equipment, manpower, and availability to construct and have the Pipeline in service no later than April 30, 2009, the deadline imposed by FERC.  Gulf Crossing has already acquired the vast majority of the easements and rights of way necessary to construct, operate, and maintain the Pipeline through voluntary purchase agreements with the affected landowners.

The Pipeline will cross the tracts of land in Grayson County, Texas as identified in the Second Amended Complaint and as shown on the plats and surveys designated Exhibits C through F to the Second Amended Complaint.  In order to timely construct and place the Pipeline in service and to operate and maintain the same, Gulf Crossing must acquire the permanent

easements and temporary workspaces as reflected on said exhibits, and as described in the Second Amended Complaint.

Gulf Crossing has not been able to reach voluntary agreements with the owners of the tracts at issue for the acquisition of the necessary property rights to construct, operate, and maintain the Pipeline. Pursuant to the power granted it by 15 U.S.C. § 717f(h) and the aforementioned certificate of public convenience and necessity, Gulf Crossing has properly exercised its right of eminent domain in the United States District Court in which the subject tracts of land are located and, with respect to each affected tract of land, is entitled to condemn the permanent easements and the temporary workspaces in connection with its right to construct, operate and maintain the Pipeline. Gulf Crossing's right to condemn, on a tract by tract basis, said permanent easements and temporary workspaces is for a public and necessary purpose, is uncontested and is hereby confirmed.

Gulf Crossing has entered into binding commitments with various pipeline construction companies, (hereinafter collectively referred to as the "Constructors"), to build the Pipeline.

There is a severe shortage of pipeline contractors with the necessary manpower and equipment to construct a 42-inch diameter natural gas pipeline, such as has been undertaken by Gulf Crossing.

Under Gulf Crossing's contracts with the Constructors, construction of the Pipeline commenced on or about June 1, 2008, and is scheduled to take approximately four to five months, with an expected in-service date of approximately December 1, 2008, in time for the 2008-09 winter heating season. Time is of the essence.

In order to timely construct and place the pipeline in service for the 2008-09 winter heating season and within the FERC-mandated deadline, Gulf Crossing must acquire immediate possession of the pipeline easements and temporary workspaces at issue.

Without immediate possession, Gulf Crossing's downstream customers (such as commercial purchasers of natural gas in Texas and beyond) and other end-users of Gulf Crossing's natural gas pipeline capacity, including residential and other consumers of natural gas, would face irreparable harm because they would be deprived of this additional incremental supply of natural gas.

Pursuant to Federal Rules of Civil Procedure 65(c), 67, and 71.1(j), Gulf Crossing tendered a check for deposit of funds into the registry of the court in the amount of its final offers made to the landowner defendants on a tract by tract basis for the property rights sought in condemnation. In further support of the motion for immediate possession, Gulf Crossing was willing for the respective landowners to immediately withdraw their respective shares of said funds pending a final compensation award.

Neither the deposit nor the withdrawal of any portion of the fund should prejudice or otherwise affect any of the parties' rights with respect to a determination of just compensation, and despite any deposit into the registry of the court, Gulf Crossing has the right to assert that the amounts deposited as well as any amounts offered to each of the Defendants exceed the just compensation due each of the defendants.

Plaintiff has laid sufficient grounds to entitle it to a preliminary injunction granting it the right of immediate possession of the interests in the Defendant lands sought in condemnation.

Plaintiff has made a sufficient showing that it will succeed on the merits.  Gulf Crossing has a Certificate of Public Convenience and Necessity issued by FERC.  Further, as represented by all counsel present at the hearing, there is no dispute between the parties as to the public use and necessity of the Project and the need for Gulf Crossing to have possession of the permanent easements and temporary workspaces for construction of the Pipeline.

The parties have confirmed that the only issue left for determination is the issue of just compensation for said property interests.  The court finds that Gulf Crossing has the substantive right under the Natural Gas Act to condemn the subject property rights.  *See East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808 (4th Cir. 2004), *cert. denied*, 543 U.S. 978, 125 S. Ct. 478 (2004).  Secondly, Plaintiff has shown that immediate and irreparable harm may result if the right of immediate possession is not granted, and that the balance of harms is in favor of Plaintiff Gulf Crossing.  The court further finds that the expeditious completion of the Pipeline is in the public interest because it is consistent with the rationale and basis for the FERC's Certificate of Public Convenience and Necessity.  The court finds that the Pipeline, if timely constructed, will increase the overall supply of natural gas available for distribution to the public for the 2008-09 winter heating season, providing downward pressure on natural gas prices.  Finally, the court finds that granting immediate possession of the property rights at issue to Gulf Crossing will further the public interest in that it will aid in ensuring that the FERC-approved Pipeline will not be delayed.

For the above reasons, the court finds that Plaintiff's motion for immediate possession satisfies the four prerequisites for preliminary injunctive relief.  Therefore, the court finds that,

during the pendency of this suit and until final judgment awarding just compensation and condemning the property interests sought herein, a preliminary injunction in favor of Gulf Crossing granting it immediate and continuing possession of the interests in land sought in condemnation is warranted, provided that Plaintiff makes the deposit of funds and posts the bond as directed below.  This order shall only apply to such property as has been confirmed by FERC. If the parties wish to amend the metes and bounds of any property subject to the court's order, they shall seek an amendment with the court.

Further, as a condition to immediate possession of the property interests sought in this action, Plaintiff shall deposit into the registry of the court the sum of Two Hundred Nineteen Thousand Four Hundred Seventy-Four and 80/100 ($219,474.80), which is subject to immediate withdrawal by the remaining Defendant landowners in the following proportions:

Raul and Holly E. Barrera:   $5,284.68

Anna Katherine Hayes:   $47,704.56

Carin Monk and Ingrid Fowler:   $90,084.72

Ronald E. and Marsha L. Wilkerson:   $76,400.84

The court finds that the above mentioned deposit is sufficient security pursuant to Federal Rule of Civil Procedure 65(c) to adequately protect the landowners with regard to the immediate possession by Gulf Crossing of the property interests in question until final judgment and payment of just compensation, it being understood that upon deposit, each landowner may withdraw all or part of the above amounts at their peril, *i.e.* that in the event a just compensation award is

made for less than the amount withdrawn, the landowner would be liable for return of the excess with interest.

The court further finds that, in addition to the funds deposited into the registry of the court, Gulf Crossing shall post a surety bond in the amount of Two Hundred Thousand Dollars ($200,000.00) conditioned on the fact that Gulf Crossing shall pay all damages in excess of the deposited funds that may be awarded or adjudged by the court against Plaintiff, provided, however, the condition of this bond is such that, if all such payments are made, then this bond shall be and become null and void, but otherwise to remain in full force and effect.

This preliminary injunction order shall remain in effect until dismissal of this suit or further order of this court.

**IT IS SO ORDERED.**

SIGNED this   11   day of   July  , 2008.

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE